# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Ellicott Dredges, LLC | * | |
| v. | * | Civil Action No. CCB-18-120 |
| Ananda Shipyard & Slipways LTD, | * | |
| | * | |

***

## Memorandum

Ellicott Dredges, LLC has sued Ananda Shipyard & Slipways LTD for declaratory relief as to the scope of the parties' obligations under one of their contractual agreements and for breach of contract. (ECF No. 4). Ananda now moves to dismiss Ellicott's claims for lack of personal jurisdiction. (ECF No. 5). For the reasons stated below, Ananda's motion will be denied.

## Background

As part of a plan to "build and sell dredges, ancillary crafts and accessories to the government of Bangladesh," Ellicott and Ananda executed a Joint Venture Agreement on January 19, 2012. (Am. Compl., ECF No. 4, at ¶¶ 6-7). About a year later, the parties also signed a License Agreement through which Ellicott licensed some of its products to Ananda. (*Id.* at ¶ 9). The License Agreement imposed non-compete clauses on both parties. Ananda was not to "enter into any other agreement of a similar nature for cutter dredges, with any other person, organization or business entity, while [the License Agreement] is in effect and for a period of three . . . years after its expiration or termination for any reason." (*Id.* at ¶ 10). Ellicott agreed not to "enter into any agreement with another shipyard for similar business in Bangladesh." (*Id.* at ¶

1

12). In clause 7.6, the License Agreement also stated that all disputes arising under the agreement would be resolved by the federal district court in Baltimore, Maryland:

> Notwithstanding what is provided elsewhere in the Contract, disputes regarding the license agreement . . . will be handled as provided below in this clause 7.6 . . . . [Ananda] . . . hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the (federal) courts of the State of Maryland and of the United States of America (located in the City of Baltimore) for any actions, suits or proceedings arising out of or relating to this clause of this agreement.

(*Id.*, Ex. B at ¶ 7.6).

The parties' Joint Venture was successful, winning several contracts from the Bangladeshi government, and as a result Ananda entered four different Purchase Orders, governed by "the laws of the State of Maryland," with Ellicott. (*Id.* at ¶¶ 13-25; Exs. C-F). As part of these Orders, Ananda was to secure letters of credit from specific banks. (*Id.*, Exs. C-F).

Ellicott alleges that Ananda violated several provisions of these orders, including its obligation to acquire letters of credit. (*Id.* at ¶¶ 28, 31-33). As a result of these breaches, the parties entered a Separation Agreement in December 2014, formally titled "Amendments to Deed of Agreement dated 19th January, 2012 and License Agreement dated March 15, 2013." (*Id.* at ¶ 34; Ex. G). By its own terms, the Separation Agreement was executed "to supplement and/or alter certain provisions of the [Joint Venture Agreement] and License Agreement in order to elucidate the extent and the ambit of relationship between the parties." (*Id.*, Ex. G at ¶ H). Among other things, the Separation Agreement removed the non-compete restrictions on Ellicott's conduct. (*Id.* At ¶ 38; Ex. G at ¶6). The Separation Agreement also stated that the Separation Agreement, "the [Joint Venture Agreement] and the License Agreement and all non-contractual obligations arising from or in connection with the same shall be governed and enforced in accordance with the governing law and enforcement provisions contained in Clause

2

7.6 of the License Agreement." (*Id.*, Ex. G at ¶ 7). Despite these modifications, Ananda sent Ellicott a demand letter in December 2017 claiming that Ellicott violated the non-competition provision of the License Agreement. (*Id.* at ¶ 42).

A month later, Ellicott filed suit seeking a declaratory judgment on the parties' rights and obligations under the Separation Agreement and claiming that Ananda has breached its obligations under the Joint Venture Agreement, Purchase orders, and License Agreement, as amended by the Separation Agreement. (*Id.* at ¶¶ 48-51, 58-60).

## Standard of Review

To survive a motion to dismiss for failure to state a claim, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). And the plaintiff typically must do so by relying solely on facts asserted within the four corners of his complaint. *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015).

To survive a motion to dismiss for lack of personal jurisdiction based on the complaint and motion papers, the "plaintiff need only make a *prima facie* showing of personal jurisdiction." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). "In deciding whether the plaintiff has

made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

## Analysis

Ananda argues the court lacks personal jurisdiction over it and therefore the court must dismiss Ellicott's suit. A court's assertion of personal jurisdiction over a nonresident defendant must comply with two requirements: "(1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst*, 334 F.3d at 396. Maryland's long-arm statute is coextensive with the limits of the due process clause. *Id.*

The due process clause permits parties to waive their challenge to personal jurisdiction by "either implicitly or explicitly" consenting to the court's jurisdiction. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 413 (4th Cir. 2002). And a party may consent through a "valid forum selection clause," which courts have held "is enough to confer personal jurisdiction on a nonresident defendant." *CoStar Realty Information, Inc. v. Field*, 612 F. Supp. 2d 660, 668 (D. Md. 2009); *Universal Sec. Instruments, Inc. v. Wing Wah Chong Inv. Co.*, 732 F. Supp 41, 42 (D. Md. 1990) (consent to a state's jurisdiction in a forum selection clause waives any due process objections parties may have to that state's exercise of personal jurisdiction); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, n.14 (1985) ("Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process.") (internal citations and quotations omitted).

The parties do not dispute that the License Agreement, Separation Agreement, and Purchase Orders contain clauses selecting this court as the forum for resolving their disagreements. Instead, they dispute which law applies to the interpretation and enforceability of

4

these forum-selection provisions, and whether under that law those clauses are enforceable. Because Maryland law applies to each of these agreements, and Maryland has long enforced freely negotiated forum-selection clauses, Ananda has consented to the court's personal jurisdiction.

I.

A federal court exercising diversity jurisdiction must apply the substantive law of the state in which it sits, including that state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Maryland choice-of-law rules, a court "determining the construction, validity, enforceability, or interpretation of a contract, [must] apply the law of the jurisdiction where the contract was made." *Cunningham v. Feinberg*, 107 A.3d 1194, 1204 (Md. 2015). And a contract is "made where the last act necessary to make the contract binding occurs." *Riesett v. W.B. Doner & Co.*, 293 F.3d 164, 173 n.5 (4th Cir. 2002); *Rullan v. Goden*, 134 F.Supp.3d 926, 941 n.8 (D. Md. 2015) (same). The parties and circuit precedent agree that the last act necessary to make a contract binding is the final party's signature. *See, e.g., Continental Cablevision of New England, Inc. v. United Broadcasting Co.*, 873 F.2d 717, 720-21 (4th Cir. 1989) (construction of settlement agreement governed by law of state to which agreement was mailed for execution by sole remaining party). The contract is then governed by the law of the place where the final signature occurs. *Id.* And under Maryland law, if "the contract contains a choice of law provision," the court must apply "the law of the specified jurisdiction." *Cunningham*, 107 A.3d at 1204.

A.

For the reasons that follow, this court has personal jurisdiction over Ananda as to Ellicott's request for a declaratory judgment. Notwithstanding Ananda's focus on the License

5

Agreement, the relevant contract for this analysis is the Separation Agreement. The Separation Agreement readjusted the parties' obligations. It "elucidate[d] the extent and ambit of the relationship between the parties" by altering the underlying Licensing Agreement. (Am. Compl., Ex. G, ¶ H). This court will therefore focus its analysis on the Separation Agreement because, as Ellicott contends, the Separation Agreement modified the License Agreement, (Am. Compl. at ¶ 34, 49), and is therefore the most current expression of the parties' relationship. And when a contract is modified by an ancillary agreement, the law of the place of the modification generally governs. *See* 17 C.J.S. Contracts § 16.[1]

The last act required to form the Separation Agreement, the final signature, occurred in Maryland when the agreement was signed by Ellicott's representative and therefore Maryland law applies.[2] (Am. Compl., Ex. G). And because the Separation Agreement selected this forum to resolve the parties' disputes through its incorporation of clause 7.6 of the License Agreement, and because under Maryland law "[a] forum selection clause is prima facie valid, and may only be set aside upon a showing of unreasonableness," *CoStar Realty*, 612 F.Supp.2d at 672, Ananda consented to this court's jurisdiction.[3]

Ananda would have this court focus its choice-of-law analysis on the License Agreement instead of the Separation Agreement. In its demand letter to Ellicott, Ananda challenged the validity of the Separation Agreement on several grounds.[4] And Ellicott's request for a

---

[1] For a direct application of this principle by another Circuit, see *Fast, Inc. v. Shaner*, 183 F.2d 504, 505 (3d Cir. 1950).
[2] The court may rely on external documents integral to the complaint. *Goines v. Valley Community Services Bd.*, 822 F.3d 159, 164 (4th Cir. 2016).
[3] The Separation Agreement states: "Notwithstanding anything contained in Clause 14 of the JVA, this Agreement, the JVA and the License Agreement and all non-contractual obligations arising from or in connection with the same shall be governed and enforced in accordance with governing law and enforcement provisions contained in Clause 7.6 of the License Agreement." (Am. Compl., Ex. G).
[4] Principally, Ananda argued that the Ellicott representative who signed the Separation Agreement, Mr. Peter Armistead Bowe, had already resigned from his position as director of the company at the time of his signature, and

6

declaratory judgment regarding the Separation Agreement's validity places the enforceability of the Separation Agreement squarely at the crux of the merits in this case. Ananda's focus on the License Agreement might therefore have superficial appeal to avoid a premature judgment of the Separation Agreement's enforceability, and thereby, the merits. But this approach misunderstands Maryland's choice-of-law principles. The place of contracting for choice of law purposes is "the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect, assuming, *hypothetically*, that the local law of the state where the act occurred rendered the contract binding." Restatement (Second) of Conflict of Laws § 188, comment e (1971) (emphasis added). By focusing on the Separation Agreement, the court is therefore not passing on the contract's enforceability, but rather allowing the law of the place of the contract's purported formation to guide its enforceability analysis.[5]

Further, Ananda has not claimed that the forum selection clause is invalid and unenforceable under Maryland law. Instead, Ananda argues that by its terms the clause only governs "actions . . . arising out of or relating to" the clause itself. In Ananda's view, it only consented to the court's jurisdiction for disputes over the scope of the clause. But Ananda's reading makes little sense. If the forum selection clause only governs claims arising out of the forum selection clause then the parties agreed to have this court engage in a circular exercise: the

---

therefore no valid contract was formed. (Am. Compl., Ex. H at ¶ 9). Ananda also argued that the Separation Agreement had not been executed and was therefore invalid because of a "to be executed stamp" that appeared on the document. *Id.*

[5] Though neither party cites to it, *Klein v. Verizon Communications, Inc.*, 674 Fed.Appx. 304 (4th Cir. 2017) (per curiam), appears to support Ananda's position at first blush, but is ultimately inapposite to the case at hand. The Klein plaintiffs similarly challenged the validity of a contract modification. *Id.* at 307. In so doing, they argued that the law selected by the parties in the unmodified contract's choice-of law clause rather than the law of the place of the last act necessary to make the modification binding should govern. *Id.* And the Fourth Circuit agreed, emphasizing that "until the [modification] became binding, which the parties dispute was ever the case, the parties operated pursuant to the prior choice of law provision." *Id.* at 308. But this case departs from *Klein* in a significant way—the License Agreement did not contain a choice-of-law provision. Without the refuge of a choice-of-law provision, this court, per Maryland's choice-of-law rules, applies the law of the place where the last act necessary to form the contract occurred. And this is equally as true for an initial contract as it is for a subsequent contract that modifies the initial contract.

7

court can decide whether it has jurisdiction to decide if it has jurisdiction and so on. That is an absurd reading, unsupported by common sense or the very clause Ananda attempts to interpret.

By way of example, the forum selection clause explains that "Ellicott shall be entitled to equitable relief, including injunction and specific performance," that "[Ananda] further agrees that service of any process, summons, notice or document by U.S. registered mail or international courier to the addressee set forth below shall be effective service of process," and that "[t]he decisions of [the federal district court in Baltimore] shall be enforceable in any court of competent jurisdiction, including the courts of Bangladesh." (Am. Compl., Ex. B at ¶ 7.6). These are incidental features of a claim that presumes the whole claim will be heard in Maryland. It would make little sense to read the parties' agreement as permitting suit in Bangladesh but requiring a federal judge in Maryland to determine if service was sufficient or to determine whether its decision as to the sufficiency of service is enforceable in other jurisdictions.

What the parties intended by their forum selection clause is written right above its text: "Notwithstanding what is provided elsewhere in the Contract, disputes regarding the license agreement or intellectual property or confidential data will be handled as provided below in this clause 7.6." (*Id.*, Ex. B at ¶ 7.6). And further below Ananda consented to "irrevocably and unconditionally waive[] any objection to the laying of venue of any action, suit or proceeding arising out of this agreement or the transactions contemplated hereby." (*Id.*) By its own terms, then, the forum selection clause rejects Ananda's cramped reading and applies to all disputes regarding the License Agreement and, by incorporation, the Separation Agreement as well. Ananda therefore consented to this court's jurisdiction as to disputes arising from the Separation Agreement.

B.

This court also has jurisdiction over Ananda as to Ellicott's claim that Ananda breached its obligations under the Purchase Orders. Each of the Orders is governed by Maryland law and all but one selected this court as the forum for all disputes arising from the parties' agreement. (ECF No. 4, Exs. C-F ¶ 13). As for the one Purchase Order that does not contain a forum selection clause, recall that the Separation Agreement applied the forum selection clause of the License Agreement to the Separation Agreement, the Joint Venture Agreement "and the License Agreement and all non-contractual obligation arising from or in connection with the same." (*Id.* at Ex. G at ¶ 7). No doubt, the Separation Agreement, which understood that it applied to "the License Agreement and the purchase orders thereunder," and "the License Agreement and related Purchase Orders," also was intended to apply to the Purchase Orders. (*Id.* at ¶ E, 3). Thus, each of the parties' Purchase Orders was amended to include, if they had not already, the forum selection clause of the License Agreement.

For the reasons already stated, these forum selection clauses are valid under Maryland law. The court thus also has personal jurisdiction over Ananda as to Ellicott's claims arising from the Purchase Orders.

C.

Finally, Ananda argues that the court does not have personal jurisdiction over it to decide Ellicott's claims for breach of contract under the License Agreement. It argues that the court should apply Bangladesh law when determining the meaning and enforceability of the License Agreement, and that under Bangladesh law the Agreement's forum selection clause is unenforceable.

9

But Bangladesh law does not apply because the relevant contract for Maryland's choice of law analysis here is again not the License Agreement but the Separation Agreement, because it modified the License Agreement. The Separation Agreement is the most recent document setting forth the parties' obligations, and it determined the forum in which the parties' disputes can be heard by, once again, stating that "this Agreement, the [Joint Venture Agreement] and the License Agreement . . . shall be governed and enforced in accordance with governing law and enforcement provisions contained in Clause 7.6 of the License Agreement." (*Id.*) As a result, the Separation Agreement governs the forum in which disputes arising from the License Agreement must be heard, and, as the court has already held, the Separation Agreement is governed by Maryland, not Bangladesh, law.[6]

Because under Maryland law the parties' forum selection clause is enforceable, the court has personal jurisdiction to hear Ellicott's claim that Ananda breached the License Agreement as well.

## Conclusion

For the reasons stated above, Ananda's motion to dismiss for lack of personal jurisdiction will be denied. A separate order follows.

9/14/18
Date

Catherine C. Blake
United States District Judge

---

[6] Ananda also argues that under Bangladesh law the court should compel arbitration. Because the court finds that Maryland law applies it does not reach this issue.